Richard Morin (SBN 285275)
Law Office of Rick Morin, PC
500 Newport Center Drive Suite 610
Newport Beach, CA 92660
Phone: (949) 996-3094
Email: legal@rickmorin.net

Attorney for Plaintiff

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Arturo Pantoja,<br><br>    Plaintiff,<br>v.<br><br>Prime Healthcare Services – Garden Grove, LLC,<br><br>    Defendant. | Case No.<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**Jury Trial Demanded** |

Plaintiff Arturo Pantoja ("Plaintiff") alleges the following:

## INTRODUCTION

Plaintiff brings this action against Defendant Prime Healthcare Services – Garden Grove, LLC ("Prime Healthcare Garden Grove") for unlawfully and intentionally discriminating against Plaintiff because of Plaintiff's disability and service animal and denying Plaintiff equal access to the Garden Grove Hospital Medical Center located at located at or about 12601 Garden Grove Boulevard in Garden Grove, California ("Garden Grove Hospital").

## PARTIES

1.  Plaintiff is a natural person. Plaintiff is and has been considered disabled.

2. Prime Healthcare Garden Grove is a Delaware limited liability company with its principal address in Garden Gove, California. At all times relevant to this complaint, Prime Healthcare Garden Grove owned, managed, operated, and/or was otherwise responsible for Garden Grove Hospital.

## JURISDICTION AND VENUE

3. The Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101, et seq.

4. Pursuant to supplemental jurisdiction, 28 U.S.C. § 1367, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California state law.

5. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the Garden Grove Hospital is in this district and Plaintiff's cause of action arose in this district.

## FACTUAL ALLEGATIONS

6. Plaintiff is disabled.

7. Plaintiff suffers from a mental disorder diagnosed by a medical provider.

8. Plaintiff utilizes a service dog. Plaintiff's service dog is specifically trained to detect the signs of Plaintiff's disability; prevent strangers from approaching Plaintiff; calm Plaintiff through distraction techniques; alert Plaintiff to the presence of triggers; and remind Plaintiff to perform certain daily tasks or activities. These tasks help Plaintiff manage his symptoms and feel more comfortable and safer in public settings. By providing support and assistance, Plaintiff's service dog greatly improves his quality of life and gives him far more independence than he would have alone.

9. On April 8, 2023, Plaintiff personally visited the Garden Grove Hospital in crisis. Plaintiff was, as customary, accompanied by his service dog. Plaintiff visited the emergency department to seek medical care. Plaintiff thought he was visiting a place of healing, but instead walked into a dystopian nightmare of fright and anguish.

10.     On the date in question, Plaintiff had been dealing with a persistent medical issue and decided it was time to seek treatment.

11.     Almost immediately upon arrival at the emergency department, Defendant's security officers began harassing Plaintiff regarding his service dog.

12.     The security staff informed Plaintiff that dogs were not allowed in the hospital.

13.     Plaintiff, while trying to obtain medical care, did his best to educate the aggressive security officers by telling him that his dog was in fact a working service animal.

14.     Regrettably, the security officers would not listen to Plaintiff, and proceeded to stalk, disturb, antagonize, and belittle Plaintiff while he waited for the medical care that he desperately needed.

15.     The security officers made it clear that Defendant would not provide medical care to Plaintiff while he was there with his service dog, contrary to Plaintiff's rights under applicable laws.

16.     Plaintiff pleaded with the security officers to educate themselves on the Americans with Disabilities Act but they continued to cruelly taunt Plaintiff.

17.      Defendant's employees repeatedly told Plaintiff that he would be able to receive medical treatment solely because of the presence of Plaintiff's service dog.

18.     One security officer, who presented herself as a purported supervisor, even taunted Plaintiff's service dog.

19.     Defendant's security staff harassed Plaintiff for a considerable amount of time before an actual medical professional approached Plaintiff to address Plaintiff's medical needs.

20.     However, the damage had been done at that point. Defendant's highly unusual treatment of Plaintiff throughout the encounter deeply affected Plaintiff and damaged him.

//

21. It is very likely that Plaintiff will have to return to the Garden Grove Hospital for follow up medical care in the future. The hospital is less than 8 miles from Plaintiff's home and it is a very convenient location for Plaintiff's medical needs.

22. When it comes to a hospital setting, it is absolutely crucial to allow patrons to bring their service animals.

23. In a hospital, individuals with disabilities are often already in a vulnerable and stressful situation, and having the support of a service animal can make a tremendous difference in their well-being and overall experience.

24. By denying access to a service animal, a hospital could be compromising the health and safety of the patient, potentially worsening their condition and making it more difficult for them to manage their disability.

25. It is essential for all hospitals and healthcare facilities to recognize the importance of service animals for individuals with disabilities and to make necessary accommodations to ensure equal access to medical care for all.

## **FIRST CAUSE OF ACTION**

Violations of the Americans with Disabilities Act

42 U.S.C. § 12101, et seq.

26. Plaintiff hereby incorporates the previous paragraphs as if they had been fully stated herein.

27. Title III of the ADA bans disability discrimination against an individual in places of public accommodation.

28. The Garden Grove Hospital is a public accommodation.

29. The ADA prohibits, among other types of discrimination, failure to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities.

30. Prime Healthcare Garden Grove has a policy that restricts and denies access to persons like Plaintiff.

31. Prime Healthcare Garden Grove's conduct knowingly and willfully excluded Plaintiff from equal access to the public accommodation.

32. As a result of Prime Healthcare Garden Grove's conduct, denying Plaintiff equal access to the Garden Grove Hospital, Plaintiff faces continuing discrimination. Plaintiff continues to suffer denial of access and faces the prospect of unpleasant and discriminatory treatment should Plaintiff attempt to return to the Garden Grove Hospital.

33. It is readily achievable for Prime Healthcare Garden Grove to provide Plaintiff and other disabled people like Plaintiff full and equal access to the Garden Grove Hospital.

34. Prime Healthcare Garden Grove does not have any legitimate business justification to excuse the denial of Plaintiff's equal access.

35. Plaintiff seeks relief pursuant to remedies set forth in section 204(a) of the Civil Rights Act of 1964 (42 USC 2000(a)-3(a)), and pursuant to Federal Regulations adopted to implement the Americans with Disabilities Act of 1990. Plaintiff is a disabled person for purposes of the ADA who is being subjected to discrimination on the basis of disability in violation of Title III and who has reasonable grounds for believing Plaintiff will be subjected to such discrimination each time that Plaintiff may use the property and premises, visit, or attempt to patronize the Garden Grove Hospital, in light of Prime Healthcare Garden Grove's conduct.

36. Prime Healthcare Garden Grove's acts have proximately caused and will continue to cause irreparable injury to Plaintiff if not enjoined by this Court.

37. Plaintiff seeks injunctive relief as to Prime Healthcare Garden Grove's inaccessible policies. Plaintiff seeks preliminary and permanent injunctive relief to enjoin and eliminate the discriminatory practices that deny full and equal access for disabled persons. Further, Plaintiff seeks an award of reasonable statutory attorney fees, litigation expenses, and costs.

//

//

## SECOND CAUSE OF ACTION

Violations of the Unruh Civil Rights Act

California Civil Code §§ 51-53

38. Plaintiff hereby incorporates the previous paragraphs as if they had been fully stated herein.

39. Prime Healthcare Garden Grove intentionally discriminated against Plaintiff, denying Plaintiff full and equal access to the Garden Grove Hospital.

40. Garden Grove Hospital is a business establishment.

41. The Unruh Act provides that a violation of the ADA is a violation of the Unruh Act. Cal. Civ. Code 51(f).

42. Prime Healthcare Garden Grove's acts and omissions as specified with regard to the discriminatory treatment of Plaintiff, on the basis of Plaintiff's disabilities, have been in violation of California Civil Code §§ 51 and 51.5, the Unruh Civil Rights Act, and have denied Plaintiff's right to full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

43. Plaintiff was harmed.

44. Prime Healthcare Garden Grove's conduct was a substantial factor in causing Plaintiff's harm.

45. Prime Healthcare Garden Grove's conduct violated the ADA.

46. As a result of the violation of Plaintiffs civil rights protected by California Civil Code §§ 51 and 51.5, Plaintiff is entitled to the rights and remedies of California Civil Code § 52, including a trebling of actual damages, minimum statutory damages, as well as reasonable attorneys' fees and costs, as allowed by statute, according to proof.

47. Plaintiff also seeks to enjoin Prime Healthcare Garden Grove from violating disabled persons' rights.

## PRAYER

Plaintiff hereby prays for the following:

1. Injunctive relief enjoining Prime Healthcare Garden Grove from engaging

in unlawful discrimination against disabled persons with service animals when visiting the Garden Grove Hospital, including, specifically, enjoining its policy of denying access to persons with service animals access to the Garden Grove Hospital without performing a good faith assessment of the reasonableness of modifying it policies to accommodate such disabled person; in addition injunctive relief compelling Prime Healthcare Garden Grove to establish and follow, in good faith, a policy to conduct a good faith assessment when evaluating a visitor with a service animal and/or other such injunctive relief as the deems appropriate;

2. Damages of no less than $125,000;

3. Attorney's fees pursuant to 42 U.S.C. 12205, Civil Code sections 52, Code of Civil Procedure section 1021.5, and/or other statute(s), expenses, and costs of suit;

4. Other relief that the court deems appropriate.

Dated: April 25, 2023

Law Office of Rick Morin, PC

_____
Richard Morin
Attorney for Plaintiff